J-S03027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY JOHN IRVINE | : | |
| | : | |
| Appellant | : | No. 606 MDA 2025 |

Appeal from the PCRA Order Entered April 10, 2025
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000150-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY JOHN IRVINE | : | |
| | : | |
| Appellant | : | No. 607 MDA 2025 |

Appeal from the PCRA Order Entered April 10, 2025
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000153-2021

BEFORE: DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.: **FILED: MAY 20, 2026**

Jeffery John Irvine ("Irvine") appeals from the order entered by the Union County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Irvine raises various claims that trial counsel provided ineffective assistance. Upon review, we affirm.

---

[1] 42 Pa.C.S. §§ 9541-9546.

This Court previously set forth the underlying facts as follows:

On June 2, 2021, Officer Nathan Fisher of the Mifflinburg Borough Police Department and Officer David Shaffer of the Middleburgh Police Department were at a gas station on Route 104 in Snyder County. The two officers saw a woman, later identified as Ashley Coen [("Coen")], in the front passenger seat of a car screaming for help and saying that she was being held against her will. [Irvine], who was the driver, pulled the car out of the gas station onto Route 104. Both Officer Fisher and Officer Shaffer pursued [Irvine]'s car into Union County in separate police vehicles.

During the pursuit, the officers activated their vehicles' emergency lights and sirens. [Irvine] did not stop, and instead accelerated to approximately 70 to 80 miles per hour. A pedestrian walking her dogs jumped out of the way of [Irvine]'s car. [Irvine] eventually stopped his car. [] Coen immediately exited [Irvine]'s vehicle and ran towards the police cars screaming for help. At that time, the officers arrested [Irvine] on the side of the road.

Both Officer Fisher and Officer Shaffer observed that [] Coen had bruises on her face and arms. The officers called for an ambulance and [] Coen was transported to Evangelical Community Hospital. Trooper Jessica Naschke of the Pennsylvania State Police interviewed [] Coen at the hospital. Trooper Naschke observed that [] Coen was scared, visibly upset, and that she had bruises on both of her eyes and on her arms.

[] Coen gave a statement to Trooper Naschke, indicating that she had moved to Mifflinburg, Union County about two months ago. [] Coen was living with [Irvine], who was her boyfriend. [] Coen explained that the night before she screamed for help, she and [Irvine] had an argument, and she slept on the couch while [Irvine] slept in the bedroom. On the morning of June 2, [Irvine] threw food at [] Coen and yelled at her that they were out of cigarettes. [] Coen began arguing with [Irvine], who then choked her, dragged her to the bedroom, and punched her in the face with a closed fist several times. [Irvine] then pulled off [] Coen's pants and underwear and inserted his penis in her vagina. [] Coen stated that, later that day, she convinced [Irvine] to go out and told him that she would buy cigarettes. Once they were

in the parking lot of the gas station, she signaled to the police officers there that she needed help.

Hannah McDowell is a registered nurse at Evangelical Community Hospital and has been trained as a sexual assault nurse examiner (SANE). Nurse McDowell performed a SANE examination of [] Coen on June 2, 2021. As part of her examination, she took a narrative statement from [] Coen, which she included verbatim in her report.

[Irvine] was charged with rape by forcible compulsion, aggravated indecent assault by forcible compulsion, strangulation, indecent assault by forcible compulsion, simple assault, and false imprisonment at Docket No. 150-2021. The Commonwealth also charged [Irvine] with one count of fleeing or attempting to elude a police officer (fleeing from police), four counts of recklessly endangering another person (REAP), and two summary violations of the Motor Vehicle Code at Docket No. 153-2021. [The case was held for court after a stipulated preliminary hearing, at which trial counsel stipulated that the affiant would testify consistently with the affidavit of probable cause.]

On September 23, 2021 and October 6, 2021, the Commonwealth filed motions pursuant to 42 Pa.C.S. § 5964, requesting that the trial court issue a certificate under the seal of the court recommending that the courts in two counties in the State of New York where [] Coen was believed to reside take [] Coen into custody to compel her attendance at trial. The trial court granted both motions and issued the requested certificates. On October 22, 2021, [after jury selection, but prior to trial,] the Commonwealth filed a motion in limine. Therein, the Commonwealth argued that [Irvine] made several phone calls to [] Coen in which he had encouraged her not to cooperate with the Commonwealth. Therefore, the Commonwealth requested that [] Coen's statements to Nurse McDowell be admitted at trial under Pa.R.E. 804(b)(6), or in the alternative under Pa.R.E. 803(4). The Commonwealth also requested that [] Coen's statements to Trooper Naschke be admitted under Rule 804(b)(6).

The Honorable Michael T. Hudock held a hearing on the Commonwealth's motion in limine on October 25, 2021. At the hearing, Trooper Naschke testified that she had reviewed recordings of the calls that [Irvine] had made from to jail to [] Coen. The Commonwealth submitted a CD with the recording of

- 3 -

[Irvine]'s phone calls along with a transcript of the calls, which were admitted without objection. The Commonwealth argued that in his calls to [] Coen, [Irvine] sought to prevent [] Coen from attending the upcoming trial. Therefore, the Commonwealth asserted that it was necessary to introduce [] Coen's statements to Nurse McDowell and Trooper Naschke as evidence at trial.

In response, [Irvine] argued that if [] Coen did not testify at trial, then the admission of her statements would violate his right to confront his accuser under the Sixth Amendment to the United States Constitution. President Judge Hudock verbally granted the Commonwealth's motion to admit [] Coen's statements, but he did not place any findings of fact on the record. *See* [N.T.], 10/25/[20]21, at 21-22. [President Judge Hudock later entered a written order.]

President Judge Hudock also presided over [Irvine]'s jury trial on October 26, 2021. During the trial, [Irvine] again objected to the admission of a hearsay statement made by [] Coen. *See* [N.T.], [10]/26/[20]21, at 17. The trial court overruled that objection and noted that [Irvine] had a standing objection to the admission of any of [] Coen's hearsay statements. *See id.* During the trial, both Trooper Naschke and Nurse McDowell testified regarding [] Coen's statements about [Irvine]'s actions. *See id.* at 47-56, 63-65. Nurse McDowell also testified that [] Coen's injuries were consistent with being hit in the face, being choked, and dragged across a floor. *See id.* at 67-70. [] Coen did not testify at trial.

That same day, the jury convicted [Irvine] of all counts at Docket No. 150-2021 and the felony and misdemeanor counts at Docket No. 153-2021. President Judge Hudock found [Irvine] not guilty of the two summary violations of the Motor Vehicle Code charged at Docket No. 153-2021.

*Commonwealth v. Irvine*, 292 A.3d 1102, 2023 WL 234577, **1-3 (Pa. Super. 2023) (non-precedential decision) (footnotes omitted).

The trial court sentenced Irvine to an aggregate term of eight and a half to twenty-nine years in prison. The trial court also ordered Irvine to register

pursuant to the Sexual Offender Registration and Notification Act.[2]  Irvine appealed, arguing that the trial court violated his right to confront Coen under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution by admitting her hearsay statements under Pa.R.E. 804(b)(6)[3] when she did not testify at trial.  This Court rejected Irvine's claim, finding that Irvine wrongfully procured Coen's absence at trial, and therefore, he forfeited his right to challenge the admission of the statements under the Confrontation Clause pursuant to Rule 804(b)(6).  ***Id.*** at **7-8.

This Court also sua sponte found that the trial court imposed an illegal sentence, concluding that his conviction of aggravated indecent assault merges with his rape conviction.  ***Id.*** at ** 8-11.  However, because the trial court had imposed a concurrent sentence, the panel did not remand for resentencing.  ***Id.*** at *11.  Thus, this Court affirmed the judgment of sentence in part and vacated the aggravated assault sentence.  ***Id.***

On January 16, 2024, Irvine, through his trial counsel, filed a PCRA petition, alleging various claims of his own ineffectiveness.  The PCRA court

---

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

[3] Rule 804(b)(6) states that statements "are not excluded by the rule against hearsay if the declarant is unavailable as a witness …" if it is "offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result." Pa.R.E. 804(b)(6).

thus appointed new counsel to represent Irvine, who filed an amended PCRA petition. The PCRA court held a hearing, at which trial counsel testified. Thereafter, the PCRA court denied Irvine's petition.[4] This timely appeal followed.

Irvine raises the following questions for our review:

I. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to object to the Commonwealth's untimely motion in limine filed after jury selection, when the Commonwealth was aware from the beginning of the case that it was dealing with a recalcitrant complainant who was unwilling to proceed with the prosecution?

II. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to object to the introduction of [Coen's] statements to the SANE nurse and/or the trooper since no finding was made that those statements even qualified as testimonial statements to be admissible under the forfeiture by wrongdoing exception?

III. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to object to the introduction of [Coen's] statements to the SANE nurse since those statements identifying the person responsible for the

_____

[4] We note that the PCRA court issued an opinion in conjunction with the order, and addressed Irvine's numerous claims as follows:

After an evidentiary hearing and upon review of the record, the Court finds that none of the Appellant's claims of ineffectiveness of counsel have any merit. Since none of the Appellant's claims have any merit on their own, there cannot be prejudice from a cumulation of meritless claims. "No amount of failed [PCRA] claims may collectively attain merit if they could not do so individually." *Com*[*monwealth*] *v. Blystone*, 725 A.2d 1197, 1208-09 (Pa. 1999).

PCRA Court Opinion, 4/10/2025, at 3 (unnumbered).

injuries were not relevant to diagnosis or treatment required by Pa.R.E. 803(4)?

IV. Whether the PCRA court erred when it found that trial counsel was not ineffective for stipulating to facts contained in the affidavit and allowing the case to proceed past the preliminary hearing, without the complainant, which ultimately created the legal basis for the case to proceed to trial?

V. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to request a missing witness adverse jury instruction when the complainant failed to appear at trial?

VI. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to request an appropriate cautionary instruction regarding the dual lay witness and expert testimony offered by the SANE nurse?

VII. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to prepare for and conduct any meaningful cross-examination of the SANE nurse and trooper?

VIII. Whether the PCRA court erred when it found that trial counsel was not ineffective for failing to object to the Commonwealth's repeated prejudicial reference throughout trial to [Coen] as the "victim?"

IX. Whether the PCRA court erred when it found that [] Irvine was not entitled to relief from his conviction and sentence because of the prejudicial effects of the cumulative errors in this case?

Irvine's Brief at 4-5 (some capitalization omitted).

## Standard of Review

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free form legal error." ***Commonwealth v. Wilson***,

273 A.3d 13, 18 (Pa. Super. 2022) (citation omitted). Appellate courts are bound by the PCRA court's credibility determinations if they are supported by the record. *Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023). An appellate court cannot substitute its judgment for that of the finder of fact. *Id.* "With respect to the PCRA court's legal consideration, we apply a de novo standard of review." *Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021) (citation omitted).

Irvine claims sound solely in the alleged ineffective assistance of trial counsel. To establish counsel provided ineffective assistance, a PCRA petitioner must plead and prove, by a preponderance of evidence, that

> (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. Counsel is presumed to be effective, and the burden is on the appellant to prove otherwise.

*Commonwealth v. Felix*, 303 A.3d 816, 819 (Pa. Super. 2023) (citations and quotation marks omitted).

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative[] not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. King*, 259 A.3d 511, 520-21 (Pa. Super. 2021) (citation omitted).

### Failure to Object to Late Filed Motion in Limine

Irvine first argues that trial counsel was ineffective for failing to object to the Commonwealth's untimely motion in limine, which was filed after jury selection. Irvine's Brief at 15. He contends that the Commonwealth was well aware of Coen's reluctance to testify, noting that she refused to appear at the preliminary hearing, and failed to maintain communication with the prosecutor. *Id.* at 16-17. Irvine notes that three days after a jury was selected and he was notified of the Commonwealth's witnesses, which included Coen, the Commonwealth filed a motion in limine to admit Coen's statements to others. *Id.* at 17. Irvine claims that trial counsel failed to object to this late admission of evidence, had no reasonable basis for not objecting, and he was prejudiced as he was denied the opportunity to confront his accuser as a result. *Id.* at 17-19.

Under Pennsylvania Rule of Criminal Procedure 578, "all pretrial requests for relief shall be included in one omnibus motion." Pa.R.Crim.P.

578. Further, "[e]xcept as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment[.]" Pa.R.Crim.P. 579. Notably, however, "[t]he omnibus pretrial motion rule is not intended to limit other types of motions, oral or written, made pretrial or during trial, including those traditionally called motions in limine, which may affect the admissibility of evidence or the resolution of other matters." *Id.* "A motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." ***Commonwealth v. Rich***, 167 A.3d 157, 160 (Pa. Super. 2017) (citation omitted).

At the PCRA hearing, trial counsel testified that he did not object to the timeliness of the motion in limine because such motions can be "filed up to the moment of and during trial." N.T., 9/20/2024, at 20; ***see also id.*** at 35 (noting there is no rule that would indicate the Commonwealth's motion was untimely filed). Although counsel indicates he should have challenged the timeliness of the motion, he admitted he was able to argue against the admission of the evidence before the trial court. ***Id.***

There is nothing in our Rules of Criminal Procedure, nor does Irvine cite any pertinent authority, that places a filing deadline on a motion in limine. To the contrary, Rule 578 expressly excludes motions in limine from the filing requirements of an omnibus pretrial motion. ***See*** Pa.R.E. 578. The request

being raised must simply be made prior to the introduction of evidence sought to be introduced. **See Rich**, 167 A.3d at 160.

As noted, the Commonwealth filed the motion in limine after jury selection, but before trial had commenced or the evidence in question had been introduced. Thus, trial counsel would not have had a basis to object to the Commonwealth's motion on timeliness grounds. "Counsel will not be deemed ineffective for failing to raise a meritless claim." **Commonwealth v. Washington**, 927 A.2d 586, 603 (Pa. 2007). Accordingly, Irvine's ineffectiveness claim regarding the timeliness of the motion in limine has no arguable merit.

### Failure to Object to Introduction of Coen's Statements Through Nurse McDowell and Trooper Naschke

Although recognizing that a defendant can forfeit his right to confront an unavailable witness where a defendant wrongfully procures a declarant's absence at trial, Irvine contends that trial counsel was ineffective for failing to object to the introduction of Coen's statements to Nurse McDowell and Trooper Naschke. Irvine's Brief at 20, 22. He argues that trial counsel failed to "question whether or not the statements made by [Coen] qualified as testimonial statements to satisfy the forfeiture by wrongdoing standards." **Id.** at 22. He observes that counsel admitted he had no reasonable basis for failing to raise the issue and Irvine asserts that he was prejudiced by counsel's failure because Coen's statements were entered into evidence. **Id.**

The United States and Pennsylvania Constitutions protect the right of each criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amend. VI; PA. CONST. Art. I § 9. "[T]he Confrontation Clause prohibits admission of 'testimonial' hearsay unless the defendant had a prior opportunity to cross-examine the witness who made the statement (and the witness is unavailable at trial)." *Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa. Super. 2024) (citing *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004)).

> [A] statement is "testimonial" if it is the "functional equivalent" of ex parte in-court testimony, "formalized testimonial materials," or made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial. In making the latter determination, we can consider a statute providing that the statement is to be used for an evidentiary purpose. Likewise, statements given to police are testimonial if there is no ongoing emergency and the primary purpose of police questioning is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* (citations and some quotation marks omitted). By contrast, "[w]hen a statement is non-testimonial in nature, … the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Commonwealth v. Smith*, 351 A.3d 1245, 1270 (Pa. Super. 2026) (citation and quotation marks omitted).

At the PCRA hearing trial counsel testified that he focused his argument regarding the admission of Coen's statements through the testimony of the nurse and trooper to be violative of the Confrontation Clause. N.T., 9/20/2024, at 21, 36. He indicated he did not argue the statements did not

qualify as testimonial. ***Id.*** at 21. Trial counsel stated that he had no strategic basis for failing to raise this specific objection. ***Id.***

Although Irvine presents an ineffectiveness claim, he does not indicate what relief counsel should have sought if he had objected to the non-testimonial nature of the admitted statements. Pointedly, if the statements were not testimonial, as Irvine appears to argue, the Confrontation Clause would not be at issue, and he would have been required to present an argument that the statements were inadmissible under a Rule of Evidence. ***See Smith***, 351 A.3d at 1270. He wholly fails to do so.

Moreover, this Court ostensibly found that Coen's statements were testimonial in determining that the statements were not precluded by the Confrontation Clause because Irvine procured Coen's absence at trial and Rule 804(6) therefore applied. ***See Irvine***, 2023 WL 234577, **7-8. Thus, Irvine's ineffectiveness claim is without merit. ***See Commonwealth v. Thomas***, 323 A.3d 611, 626-27 (Pa. 2024) (rejecting appellant's ineffectiveness claim because appellant failed to allege or prove how counsel's failure impacted the development of his defense or caused him prejudice).

### Failure to Object to Coen's Statements to Nurse McDowell as Irrelevant

Irvine argues that as a fallback option in its motion in limine, the Commonwealth argued that Coen's statements to the SANE nurse should be

admitted pursuant to Pa.R.E. 803(4).[5]  Irvine's Brief at 23.  He contends that Nurse McDowell testified to statements outside any diagnosis or treatment, including identifying Irvine.  *Id.* at 23-24.  He asserts that trial counsel should have objected to any testimony outside the parameters of Rule 803(4).  *Id.* at 24.

Irvine is correct that, in addition to claiming the admissibility of Coen's statements to Nurse McDowell under Rule 804(b)(6), it alternatively argued for admissibility under Rule 803(4).  *See* Commonwealth's Motion in Limine, 10/22/2021, at 4-9.  The record reflects that following a hearing, the trial court granted the motion under both hearsay exceptions.  N.T., 10/25/2021, at 21 ("I do find based actually under both rules that the statements to the

_____

[5] Rule 803(4) states the following:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> \*     \*     \*
>
> **(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:
>
> (A) is made for--and is reasonably pertinent to--medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

SANE nurse are admissible."). This Court found the trial court did not abuse its discretion under Rule 804(b)(6). *See Irvine*, 2023 WL 234577, **7-8.

Thus, even if we assume counsel was ineffective for failing to object to the testimony under Rule 803(4), the trial court found it was also admissible under Rule 804(b)(6), and this Court agreed. *See id.* Therefore, Irvine was not prejudiced by counsel's purported failure. Accordingly, his ineffectiveness claim fails.

**Stipulating To Facts Contained in the Affidavit and Allowing The Case to Proceed**

Irvine next contends that trial counsel was ineffective for stipulating to the facts in the affidavit of probable cause and allowing the case to proceed past the preliminary hearing, without testimony from Coen. Irvine's Brief at 25. He argues that he was prejudiced by the failure to conduct a preliminary hearing, as the Commonwealth's evidence was never tested. *Id.* at 26. Irvine emphasizes trial counsel admitted at the PCRA hearing that the preliminary hearing was important and he committed a tactical error by allowing the case to proceed. *Id.* at 27; *see also id.* at 27-28 n.1 (asserting counsel acknowledged that if Coen had not shown up at the preliminary hearing, it was likely she would not show up to any proceedings, which may have led to a dismissal of the case). He claims that without the preliminary hearing, he had no opportunity to confront Coen and a reliable determination of guilt could not be made. *Id.* at 27.

Ineffective assistance of counsel claims relating to a preliminary hearing are cognizable under the PCRA. ***Commonwealth v. Stultz***, 114 A.3d 865, 882 (Pa. Super. 2015). The purpose of a preliminary hearing is to avoid incarcerating or trying a defendant without sufficient evidence to establish a crime was committed and the defendant likely committed the crime. ***Commonwealth v. Sanchez***, 82 A.3d 943, 984 (Pa. 2013). However, "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." ***Id***.; ***see also Stultz***, 114 A.3d at 882 ("It would be incongruous to make the prejudice analysis for purposes of PCRA review less stringent than that during direct review.").

At the PCRA hearing, trial counsel testified that it was a tactical error to stipulate to the preliminary hearing. N.T., 9/20/2024, at 9. Counsel stated that Coen did not show up to the hearing, and he believed that if she was not at the preliminary hearing, she would not appear in the future. ***Id.*** at 11, 12, 32; ***see also id.*** at 33 (noting that it would be rare for the Commonwealth not to call a victim at trial). According to counsel, without Coen, there was no case. ***Id.*** at 11. At the time of the preliminary hearing, counsel was unsure whether the case would be resolved by a plea or at trial. ***Id.*** at 32.

Here, the jury's guilty verdict rendered immaterial any challenge to counsel's purported ineffectiveness regarding the preliminary hearing. ***See Sanchez***, 82 A.3d at 984. For the same reason, Irvine cannot establish he

was prejudiced by counsel's actions. *See Stutz*, 114 A.3d at 882. Accordingly, Irvine's claim is without merit.

### Failing to Request Missing Witness Jury Instruction

Next, Irvine asserts that trial counsel should have requested a missing witness adverse jury instruction because Coen failed to appear at trial. Irvine's Brief at 28. He highlights that only the Commonwealth had access to Coen as a witness and his trial counsel never met her. *Id.* at 28-29. Trial counsel admitted that he did not request this instruction, but should have, and that he had no reasonable basis for failing to request the instruction. *Id.* at 29. Irvine claims his right to a fair trial was violated in the absence of this instruction. *Id.*

> A missing witness instruction is appropriate where the witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative. Where the party does not present the witness, the jury may be instructed that it can infer that the testimony of the witness would have been unfavorable.

*Commonwealth v. Crumbley*, 270 A.3d 1171, 1185 (Pa. Super. 2022) (citations, quotation marks, and brackets omitted). However, a party is not entitled to a missing witness adverse inference instruction under the following circumstances:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

**Commonwealth v. Miller**, 172 A.3d 632, 645-46 (Pa. Super. 2017) (citation omitted).

As explained above, we previously found that "the record establishe[d] that [Irvine] was involved in procuring [Coen's] unavailability as a witness and that he acted with the intent of procuring that unavailability." **Irvine**, 2023 WL 234577, at *8. Thus, there was a "satisfactory explanation" for the Commonwealth's failure to call Coen as a witness, and her availability was not within the Commonwealth's control. **See Miller**, 172 A.3d at 646. In making his argument, Irvine completely ignores this Court's finding. Accordingly, Irvine was not entitled to the missing witness adverse inference jury instruction, and trial counsel was not ineffective for failing to request such an instruction. **See Washington**, 927 A.2d at 603.

### Failing to Request a Cautionary Instruction Regarding Lay and Expert Witness Testimony Provided by Nurse McDowell

Irvine claims that trial counsel was ineffective for failing to request a cautionary instruction regarding the lay and expert witness testimony offered by Nurse McDowell. Irvine's Brief at 29. He argues that despite Nurse

McDowell offering both fact and expert testimony, the trial court never instructed the jury on the roles of the two types of evidence. *Id.* at 30. Trial counsel admitted to failing to request the instruction and had no reasonable basis for failing to do so. *Id.* According to Irvine, he was prejudiced by the lack of an instruction because Nurse McDowell's dual testimony increased the risk that the jury gave her testimony undue influence in rendering the verdict. *Id.* at 31.

The record reflects that at trial, Nurse McDowell was qualified as a SANE expert. N.T., 10/26/2021, at 60. She explained that she conducted a SANE exam on Coen on June 2, 2021 and completed a report following her examination. *Id.* at 60-61. In the report, Nurse McDowell provided Coen's narrative statement about the incident verbatim. *Id.* at 63-65. She further noted that Coen stated she had lost consciousness and that a CAT scan was conducted on Coen's neck. *Id.* at 66-67. Nurse McDowell also described Coen's injuries based on photographs she took at the time of the exam. *Id.* at 65, 67-71.

At the PCRA hearing, trial counsel acknowledged that Nurse McDowell provided both expert and lay testimony at trial. N.T., 9/20/2024, at 27. Trial counsel confirmed that he did not ask for any cautionary instructions as to Nurse McDowell's testimony. *Id.* at 27, 41; *see also id.* at 41 (noting that counsel had been part of other trials with SANE nurses as experts and he has never asked for a cautionary instruction, but he still should have in this case).

Although he stated his concern that a cautionary instruction would have emphasized the fact that Nurse McDowell was introduced as an expert, he separately stated he had no strategic reason for not requesting the instruction. *Compare id.* at 41, *with id.* at 27.

As an initial matter, Irvine has not established counsel had no reasonable basis for refusing to request a cautionary instruction. Although trial counsel provided conflicting testimony as to whether he had a reasonable basis for the omission, he clearly stated that he did not request a cautionary instruction to avoid highlighting that Nurse McDowell was introduced as an expert. As Nurse McDowell was one of the witnesses explaining what Coen had stated regarding the incident, counsel had a reasonable basis to avoid highlighting Nurse McDowell's expertise to the jury. *See Commonwealth v. Johnson*, 179 A.3d 1105, 1119 (Pa. Super. 2018) ("It is well-settled law that the decision whether to seek a jury instruction implicates a matter of trial strategy.") (citation omitted); *see also Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) ("Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests.") (citation omitted).

Moreover, Irvine's bald claim of prejudice, without any supporting evidence or argument, is inadequate.[6] ***See Commonwealth v. Sandusky***, 203 A.3d 1033, 1044 (Pa. Super. 2019) ("[B]oilerplate allegations and bald assertions of … prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.") (citation omitted). He states that Nurse McDowell's testimony was given undue deference, without indicating how the instruction would have changed the jury's verdict. Although credibility was a significant factor in this case, Irvine ignores the fact that Trooper Naschke also testified about Coen's statement made to him. Thus, Irvine did not establish that trial counsel's failure to seek a cautionary instruction as to the introduction of Nurse McDowell's testimony undermined the outcome of the trial, such that Irvine is entitled to a new trial. Accordingly, Irvine's ineffectiveness claim fails.

**Failing to Conduct Meaningful Cross-Examination of Nurse McDowell and Trooper Naschke**

_____

[6] We note that Irvine cites to a federal case to support his argument that counsel was ineffective on this basis. ***See United States v. Lopez-Medina***, 461 F.3d 724, 743-45 (6th Cir. 2006) (concluding that the district court abused its discretion in allowing the DEA agents to testify as both fact and expert witnesses without providing the jury a cautionary instruction regarding their dual role). "Decisions of federal courts… are not binding on this court, but may be used as persuasive authority." ***Commonwealth v. Lang***, 275 A.3d 1072, 1083 (Pa. Super. 2022) (citation omitted). We do not find ***Lopez-Medina*** to be persuasive here, particularly in light of Trooper Naschke's testimony regarding Coen's statement.

Irvine further contends that trial counsel was ineffective for failing to meaningfully cross-examine Nurse McDowell and Trooper Naschke. Irvine's Brief at 32-33. He argues that trial counsel only asked Trooper Naschke "four brief and innocuous questions" and Nurse McDowell "just one question." *Id.* at 33. Although trial counsel stated that he conducted a thorough cross-examination, he failed to ask any questions about the circumstances surrounding Coen's statements at the hospital. *Id.* According to Irvine, because Coen did not testify, and trial counsel sought to keep her statements to Trooper Naschke and Nurse McDowell out of trial, counsel had no reasonable basis for failing to conduct a "robust" cross-examination. *Id.* He argues he was prejudiced because the jury only deliberated for twenty-nine minutes before rendering a verdict. *Id.* at 33-34.

Trial counsel testified that he did not conduct a lengthy cross-examination of either witness because Irvine had more to lose than to gain by conducting a lengthy cross-examination. N.T., 9/20/2024, at 24-26, 40-41; *see also* N.T., 10/26/2021, at 57, 72. The record reflects the following exchange between trial counsel and PCRA counsel, wherein trial counsel explained his basis for limiting his examinations:

> [Trial counsel:] Often times when I'm in a position at trial where I feel as if essentially we've been boxed in as the defense, I get very concerned that something I say, something I ask about is going to trigger a claim that we opened the door to something else.
>
> And by that point[,] it was pretty clear where this was going, and I didn't want to bring in too many opportunities for somebody to

say oh, well, you know what, now you give them the chance to bring this up.

[PCRA counsel:] Do you believe or did you believe that your cross-examination as thorough under the circumstances?

[Trial counsel:] Under those circumstances, yes.

\*     \*     \*

[PCRA counsel:] [W]as there any strategic reason that you had for not questioning these witnesses on [various grounds]?

[Trial counsel:] Again, other than what I stated before.  I was worried about being faced with the you open the door trap.

[PCRA counsel:] And was there something specific that you were concerned about if that door was opened that you didn't want the jury to hear?

[Trial counsel:] Well, really anything because at that point it was fairly obvious we were hitching our wagon to the notion that this was an unconstitutional proceeding because he didn't have the right to face his accuser.

N.T., 9/20/2024 at 24, 26.  Trial counsel also highlighted his concern that a lengthy examination of Nurse McDowell would have bolstered her qualifications and testimony.  *Id.* at 26, 37-38.  Further, counsel noted that neither Nurse McDowell nor Trooper Naschke had inconsistencies in their testimony.  *Id.* at 36, 37-38, 42.

The law is clear that "[m]atters concerning the examination and cross-examination of witnesses are matters clearly within the province of trial counsel." ***Commonwealth v. Smith***, 17 A.3d 873, 912 (Pa. 2011).

Irvine failed to demonstrate how further cross-examination would have been beneficial to his defense that he did not commit the crimes.  ***See Sneed***,

45 A.3d at 1107.  Trial counsel explained his strategy was not to open the door to additional testimony or strengthen the testimony of the two witnesses. Further, trial counsel focused his defense on the fact Coen did not testify at trial and Irvine's constitutional right to confront his accuser.  Under these circumstances, trial counsel's method of cross-examination was a reasoned, strategic choice.  It is beyond the scope of this Court's review to second-guess trial counsel's trial strategy in hindsight or opine as to whether a different strategy might have been employed.  ***See id.***

Moreover, we are not persuaded that if trial counsel had chosen to conduct a more "robust" cross-examination of the witnesses, there was a reasonable probability that the outcome of the trial would have been different. Irvine points only to the jury's quick deliberations to establish prejudice, but presents no reasoned analysis to demonstrate that this was based upon counsel's cross-examination of the nurse and the trooper or even that the outcome of the trial would have been different.  ***See Sandusky***, 203 A.3d at 1044.  Thus, Irvine's ineffectiveness claim in this regard fails.

**Failing to Object to Repeated References to Coen as the Victim**

In his penultimate claim, Irvine contends that trial counsel was ineffective for failing to object to the Commonwealth's repeated use of "victim" to describe Coen.  Irvine's Brief at 34, 35.  He argues that a prosecutor cannot express his belief that the defendant is guilty.  ***Id.*** at 34, 36.  By using "victim" to describe Coen, when she was not present at trial, "the prosecution told the

- 24 -

jury that a crime was committed or that the [c]omplaintant has been injured."

*Id.* at 36. In arguing he was "grossly" prejudiced, Irvine states that trial counsel agreed that the use of "victim" was prejudicial. *Id.* at 35-36.[7]

Trial counsel acknowledged that despite Coen not appearing at trial, she was referred to as a "victim" throughout trial. N.T., 9/20/2024, at 29. Trial counsel stated he did not object to these references because, although he agreed the term "victim" was prejudicial, as he understood the law, this was permissible. *Id.* at 29-30, 42; *see also id.* at 30 (stating he did not think it would be "fruitful" to object).

This claim is devoid of merit. The Commonwealth charged Irvine with various sexual offenses, including rape by forcible compulsion, aggravated indecent assault by forcible compulsion, strangulation, indecent assault by forcible compulsion. This Court has stated that "[r]eference to the prosecutrix in a rape case as 'the victim' is not an expression of … the guilt of the defendant." *Commonwealth v. Williams*, 439 A.2d 765, 768 (Pa. Super. 1982). Thus, any objection made by trial counsel would have, indeed, been "fruitless."

---

[7] Irvine fails to cite to any Pennsylvania case law that precludes the use of the term "victim" at trial. *See* Pa.R.A.P. 2119(a) (stating argument should be "followed by such discussion and citation of authorities as are deemed pertinent"). Instead, Irvine cites to cases from other states and federal district courts. Again, while such cases may be used as persuasive authority, they are not binding on this Court. *See Lang*, 275 A.3d at 1083.

Nor has Irvine established that the use of the term "victim" was inherently prejudicial. As noted, contrary to his claim, this was not an expression of guilt by the prosecutor. **See id.** Further, the trial court instructed the jury on the presumption of Irvine's innocence, and that "speeches by counsel are not part of the evidence." N.T., 10/26/2021, at 94-95, 96. "The law presumes the jury will follow the instructions of the court." **Commonwealth v. Eichinger**, 108 A.3d 821, 846 (Pa. 2014) (citation omitted). Therefore, Irvine is not entitled to relief on this basis.

### Cumulative Errors

Lastly, Irvine argues that the cumulative errors in the case entitle him to relief from his convictions and sentence. Irvine's Brief at 37-39. It is well settled, however, that "no number of failed claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Johnson**, 335 A.3d 685, 732 (Pa. 2025) (citation and brackets omitted). As discussed above, none of Irvine's individual ineffectiveness claims warrant relief. Thus, "the combined effect of the errors did not deprive [Irvine] of a fair trial." **See Sandusky**, 203 A.3d at 1102.

Order affirmed.

Judgment Entered.

![signature]

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/20/2026